IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ALFRED L. NEWCOMB                                                                                          PLAINTIFF

V.                                                                         CIVIL ACTION NO.: 1:12-CV-204-SA-DAS

CORINTH SCHOOL DISTRICT                                                                              DEFENDANT

MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant's Motion for Summary Judgment [40]. For the reasons set forth below, that motion is granted in part and denied in part.

FACTUAL AND PROCEDURAL BACKGROUND

The instant suit arises from a disagreement between Alfred Newcomb and the Corinth School District ("the District") regarding Plaintiff's termination. Because the implementation of District's purported reduction in force bears heavy significance in this case, context regarding both the District's organizational structure and the fiscal concerns facing the District is required. Newcomb, who was hired by the District in 2005, was primarily employed as a vehicle maintenance worker and bus driver in the transportation department. According to Newcomb, Edward Lee Childress, the District superintendent, hired him both "to do repair on buses and work in the bus shop" and "take care of any need of transportation as far as children." When work was slow in the transportation department, however, Newcomb also pitched in to perform general building maintenance. Although Newcomb primarily answered to the transportation director, Nathaniel Rogers, he also occasionally worked under the direction of the maintenance director, Brent Avent.[1] As a result of this split in responsibilities, Newcomb could not be neatly

---

[1] The Court expresses some confusion as to the correct spelling of Rogers' name. Although the parties consistently refer to him as Rogers, his letter sent to Childress on May 24, 2010 indicates that the correct spelling is Rodgers. For purposes of consistency, the Court accepts the parties' spelling.

categorized as either a maintenance or transportation employee. In Childress's declaration submitted alongside the District's motion for summary judgment, for instance, he consistently refers to Newcomb as a transportation/maintenance employee.

The District's transportation department was rather small, consisting of only Newcomb and Rogers. Although other employees occasionally provided support to the department, Newcomb testified that only he and Rogers were hired for the primary purpose of providing maintenance to the district's fleet of buses. The maintenance department, on the other hand, was comprised of three subservient employees who worked under the direction of Avent. Specifically, Tommy James, Mike Rutledge, and Tracy Stafford were employed exclusively in the maintenance department under Avent's charge. Although those employees occasionally lent assistance to the transportation department by jumping buses off and filling in for sick drivers, they were categorized as maintenance employees. As such, their primary responsibilities included performing general maintenance on the District's buildings.

During the 2009 through 2010 academic year, the District's state appropriated funding was reduced, and administrators were told to expect additional reductions in the following year's funding. On February 12, 2010, Childress met with the District's Board of Trustees (the Board) and discussed potential cost-saving avenues for the District going forward. Following that meeting, Childress met with the District's finance director, Bobbie Sparks, and crafted a cost-reduction plan that involved significant staff reductions. That plan included cutting at least nineteen positions district-wide and contemplated eliminating positions from both the maintenance and transportation departments. Childress thereafter met with numerous supervisors whose departments would be affected by the anticipated personnel reductions. Rogers was concerned about the effects such a cut would have on the transportation department and voiced

opposition to any plan that involved eliminating Newcomb's position. Around the same time, the District continued on a previously implemented consolidation plan that sought to downsize the District from five campuses to three campuses within the next year. On May 10, 2010, Childress submitted the proposed personnel plan to the Board. On May 24, 2010, Rogers sent Childress a letter in which he recommended approximately twenty-four bus drivers as personnel for the upcoming year. Newcomb was not included on that list. On May 25, 2010, Childress wrote a letter to the Board in which he stated, "the financial crisis facing the State and the unknown factors associated with our local economy have led us to make the following recommendations regarding staffing for the 2009-2010 school year." The letter included a list of proposed position eliminations and articulated that "[t]he following positions are being eliminated in the district as a result of reduced funding, consolidation of school services, and enrollment projections." Included in the list of positions to be eliminated were: "2-Maintenance positions (1 Due to Bldg. Consolidation)" and "1-Transportation Position." In total, the plan proposed eliminating eighteen positions and stated that eleven employees were not being recommended back for reemployment. Included in that list was "Alfred Newcomb," who was identified as an employee of the transportation department, as well as "Mike Rutledge," who was identified as an employee of the maintenance department. The plan indicated that there remained some fluidity in the situation, however, articulating that "[i]t is my hope and belief that we will be able to offer employment back to at least two of the teachers being recommended for non-renewal."

Over the course of the next several months, the District proceeded to non-renew a total of nine employees. Seven of those employees were non-renewed at the end of May 2010, while two others were non-renewed at the beginning of July 2010. The layoffs included five teachers,

3

one teacher's assistant, two custodians, and one cafeteria employee. In the maintenance and transportation departments, Stafford's maintenance position was eliminated but he was transferred into a custodial job. Rutledge, who had initially been targeted for elimination, was never actually terminated. According to Childress, while "transitioning into the new buildings," the administration determined that Rutledge's position was needed and he was thus retained. Newcomb, on the other hand, also continued his employment with the District throughout the summer. Childress claims that although the District never changed its mind regarding his impending termination, they opted to keep him on staff "at least until school started in 2010" to perform maintenance on the buses during the summer, drive the buses for the summer session, and assist in general consolidation efforts.

On August 2, 2010, Newcomb was assisting a co-worker on a personal building project when the two fell backwards from seventeen feet of scaffolding. Immediately after the fall, Newcomb was admitted to the local hospital for a number of diagnostic procedures, and scheduled a follow-up appointment with Dr. Randall Frazier for the next day. On August 3, Newcomb attended the appointment with Frazier and then contacted Rogers to inform him about the fall and his subsequent injury. Childress was made aware that Newcomb had suffered an injury and would be at least temporarily unavailable to work.

In the coming weeks, Newcomb continued to keep the District apprised of his condition by providing District personnel with medical documentation. Newcomb informed the District that he would need to exhaust his personal and sick leave, and the District declined to inform him of his entitlement to leave under the Family Medical Leave Act ("FMLA"). On September 8, 2010, Newcomb's visit with Frazier revealed that he remained totally disabled by the injury, and a surgical procedure was scheduled for September 16. On September 16, Frazier conducted an

exploratory surgery on Newcomb's injured arm. According to Newcomb, the procedure revealed a torn "curtain," but Frazier was able to repair it during the same operation. Newcomb was released from the care of the hospital the next day on September 17.

When he arrived home, Newcomb received a termination letter from Childress that informed him that his position was being eliminated as a result of the district-wide reduction in force. In pertinent part, that letter stated:

> Dear Alfred:
>
> I regret to inform you of your termination as an employee of the school district. As a result of school mergers and financial considerations, the district is going through a reduction-in-force. Your position is being eliminated as a part of our reduction-in-force.
> . . .
> I am sorry to inform you in this manner, but you have not been on the job for me to discuss this matter with you.
> . . .
> Thank you for your service to the Corinth School District.

According to Childress, the timing of the letter was necessitated by his own personal travel plans scheduled for the end of September. He represents that District administrative staff approached him about several pending District matters that needed to be addressed before his vacation, one of which happened to include the elimination of Newcomb's position.

Newcomb filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on March 12, 2011. Therein, Newcomb averred, "I believe that I have been discriminated against because of a perceived disability in violation of the Americans with Disabilities Act, Amendments Act, (ADAAA)." Newcomb received a right-to-sue letter in August 2011, but failed to file suit within ninety days.

On September 17, 2012, Newcomb filed the present action in this Court, averring liability under the FMLA, the Americans with Disabilities Act (ADA), and the Rehabilitation Act of

1973. Specifically, Newcomb claims that "contrary to regulations of the United States, Defendant failed to notify Plaintiff of his entitlement to Family and Medical leave following the expiration of the accrued time to which he was entitled." Further, Plaintiff alleges that "[o]n September 23, 2010, at a time when Plaintiff should have been on Family and Medical leave, and would have been, except for Defendant's failure to notify him of his rights under the [FMLA], Plaintiff was terminated from his employment." In summation, the complaint concludes that "Plaintiff was discharged because of his being disabled and his having a history of a disability, and was discriminated against because he had a disability and a history of a disability." And, that "Plaintiff was discharged at a time when he was on necessary medical leave, although he had not been formally granted this leave because of the failure of Defendant to comply with regulations of the United States, requiring he be given notice of his rights to medical leave."

The District thereafter moved to dismiss Plaintiff's ADA and Rehabilitation Act claims on the basis that he had failed to file a charge of discrimination within one-hundred eighty days of his termination and had additionally failed to file suit within ninety days of receiving a right-to-sue notice. In response, Plaintiff conceded that the claims were due to be dismissed, and the Court therefore granted the partial motion to dismiss [6]. Defendants have now filed the instant motion for summary judgment, contending that Plaintiff's claims for relief under the FMLA additionally fail. The Court now turns to the merits of those contentions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

6

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION AND ANALYSIS

Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave within a twelve-month period if he suffers from a disabling health problem that precludes his ability to work. 29 U.S.C. § 2612(a)(1); Ragsdale v. Wolverine Worldwide, Inc., 535 U.S. 81, 86, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002); Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir. 2005). Upon returning from such leave, the employee must generally be reinstated to the same or an

7

equivalent position. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a); Rutland, 404 F.3d at 923. Additionally, however, the FMLA makes it unlawful for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). The FMLA further prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual" for exercising FMLA-protected rights. Id. § 2615(a)(2). Thus, the FMLA is comprised of two distinct types of provisions: prescriptive and proscriptive. Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998); Nero v. Ind. Molding Corp., 167 F.3d 921, 927 (5th Cir. 1999). The prescriptive provisions "create[] a series of entitlements or substantive rights," while the proscriptive provisions "protect[] employees from retaliation or discrimination for exercising their rights under the FMLA." Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 580 (5th Cir. 2006). Plaintiff has brought claims under both the prescriptive and proscriptive provisions, and the Court therefore examines them separately.[2]

### I. *Proscriptive Retaliation Claim*

Under Fifth Circuit precedent, FMLA retaliation claims are governed by the familiar McDonnell Douglas burden-shifting framework. Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). Accordingly, in order to establish a prima facie case of retaliation,

---

[2] Although the parties simply designate Plaintiff's claims as a claim for retaliation and claim for interference, the Fifth Circuit has provided a more specific rubric for categorizing FMLA claims and the Court is of the opinion that the proscriptive and prescriptive designations provide additional clarity for purposes of the present case. See Cuellar v. Keppel Amfels, LLC, 731 F.3d 342, 349 (5th Cir. 2013) (Elrod, J., concurring) (explaining the court's usage of prescriptive and proscriptive tags and noting that "the critical inquiry" is whether the claim "arises from the denial of a substantive FMLA entitlement" or from "penalizing an employee for the exercise of FMLA rights") (internal quotation omitted); Shirley v. Precision Castparts Corp., 726 F.3d 675, 681 (5th Cir. 2001) ("Plaintiff's claimed right to return to work after his qualified absence is a substantive right within the first category."); Baham v. McLane Foodservice, Inc., 431 F. App'x 345, 347 n.1 (5th Cir. 2011) (differentiating between a proscriptive claim based on purported penalization for employee's exercise of rights under the FMLA and prescriptive interference claim based on denial or interference with underlying substantive rights); Mauder, 446 F.3d at 580-84; Linzy v. Sara Lee Corp., 2012 WL 1190907, at *3 (N.D. Miss. Apr. 10, 2012) (differentiating between the two types of claims); Bell v. Dallas Cnty., 2011 WL 3874904, at *1 (N.D. Tex. Aug. 30, 2011) (deeming a prescriptive claim synonymous with an interference claim and a proscriptive claim synonymous with a retaliation claim).

8

Newcomb must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and (3) there was a causal connection between the protected activity and the discharge.[3] Id. If the Plaintiff can establish a prima facie case, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the termination. Id.; McArdle v. Dell Prods. Inc., 293 F. App'x 331, 340 (5th Cir. 2008). If the employer carries that subsequent burden, the burden then shifts back to the Plaintiff to show "by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." Lorentz v. Alcon Labs. Inc., 535 F. App'x 319, 322 (5th Cir. 2013) (quoting Richardson, 434 F.3d 327, 332 (5th Cir. 2005)).[4]

As to Newcomb's prima facie case, Defendant challenges only his ability to show a causal connection between his exercise of protected activity and discharge and the Court tailors

---

[3] Defendant first spends significant effort arguing that Plaintiff failed to raise the proscriptive retaliation claim in his complaint. Newcomb's complaint, however, alleged Plaintiff was seeking relief under the Family and Medical Leave Act and that "[o]n September 23, 2010, at a time when Plaintiff should have been on Family and Medical Leave, and would have been, except for Defendant's failure to notify him of his rights under the Family and Medical Leave Act, Plaintiff was terminated from his employment." Moreover, Plaintiff further averred that "Plaintiff was discharged at a time when he was on necessary medical leave, although he had not been formally granted this leave because of the failure of Defendant to comply with regulations of the United States, requiring he be given notice of his right to medical leave." The Court finds such allegations sufficient to put Defendant on notice of the retaliation claim under Federal Rule of Civil Procedure 8(a). See Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (noting that "the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). Additionally, as articulated by the Fifth Circuit, "courts may look to the pretrial conduct of parties to determine whether a defendant had notice." Lanier v. Univ. of Tex Sw. Med. Ctr., 527 F. App'x 312, 316 n.8 (5th Cir. 2013) (citing Sundstrand Corp. v. Standard Kollsman Indus., Inc., 488 F.2d 807, 811 (7th Cir. 1973)). Here, Defendant responded to a retaliation claim in its answer. The District's contention that Plaintiff failed to plead retaliation is without merit. See Def. Ans. at p. 2, 3 (Arguing that "[a]ll decisions, actions and inactions by Defendant were based on reasons other than any discrimination or violation prohibited by the ADA, Rehabilitation Act or the FMLA," and "that even if a factor prohibited by the ADA, the Rehabilitation Act, FMLA or any other statute had been a motivating factor in any personnel decision or action affecting Plaintiff, the same decision or action would have occurred in the absence of such factor(s).)"

[4] Although Plaintiff argues that the mixed-motive standard applies here, e.g. Richardson, 434 F.3d at 333, the Fifth Circuit has not yet decided whether the mixed-motive framework continues to apply to FMLA retaliation claims following the Supreme Court's decision in University of Texas Southwestern Medical Center v. Nassar. See Ion v. Chevron USA, Inc., 731 F.3d 379, 390 (5th Cir. 2013) (citing Nassar, — U.S. —, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)); Castay v. Ochsner Clinic Found., 2014 WL 432518, at *2 n.5 (E.D. La. Feb. 4, 2014). Because the Court finds Plaintiff has created a genuine dispute of material fact under even the more stringent pretext standard advocated by Defendant, the Court need not reach the merits of this dispute at the present juncture. The Court does, however, determine that additional briefing on the issue is necessary for purposes of trial.

its analysis accordingly. See In re Cao, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the court's] role is to adjudicate the arguments with which [it is] presented."). A request for FMLA qualifying leave is a protected activity, and the "plaintiff is not required to specifically state that he is asserting rights under the FMLA" to invoke such protection. Wilson v. Noble Drilling Serv. Inc., 405 F. App'x 909, 913 (5th Cir. 2010). Instead, the employee must provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." Id.; Greenwell v. State Farm Mut. Auto. Ins. Co., 486 F.3d 840, 842 (5th Cir. 2007) (quoting 29 C.F.R. § 825.302)) ("Employees need not 'expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed."); Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 977 (5th Cir. 1998) ("The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."). To establish the requisite element of causation, Newcomb need show either (a) that he was treated less favorably than an employee who had not requested leave under the FMLA, or (b) that the adverse decision was made because he took FMLA leave. Hunt v. Rapides Healthcare Sys., 277 F.3d 757, 768 (5th Cir. 2001) (citing Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999)).

Although Newcomb provides argument in support of both methods, the Court finds that Plaintiff has provided sufficient circumstantial evidence to support his claim that he was fired because he required FMLA leave. As articulated by the Fifth Circuit, "[w]hen evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." Mauder

v. Metro. Trans. Auth. of Harris Cnty., 446 F.3d 574, 583 (5th Cir. 2006); Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992) (deeming suspicious timing as an element supporting a retaliatory finding); Meinelt v. P.F. Chang's China Bistro, Inc., 787 F. Supp. 2d 643, 653 (S.D. Tex. 2011) (relying on "temporal coincidence" to support pretext argument).

In Linzy v. Sara Lee Corp., this Court considered the significance of temporal proximity in a similar context. 2012 WL 1190907, at *5 (N.D. Miss. Apr. 10, 2012). There, the plaintiff suffered significant injury to one of his fingers while cleaning a batch blender at defendant's production facility. Id. at *1. Approximately seven days after the injury was reported, the plaintiff was terminated. Id. This Court concluded that the suspicious timing between the injury and the termination was sufficient to establish causation for purposes of the plaintiff's prima facie case. Id.

In the case at bar, Plaintiff suffered injury on August 2, 2010. Shortly thereafter, Defendant was made aware that Plaintiff had suffered an injury to his arm and would be at least temporarily unavailable for work. Plaintiff provided and continued to provide all relevant medical paperwork to his employer. Plaintiff further informed Defendant that he would be required to exhaust his accrued leave, and Defendant intentionally abstained from informing Plaintiff of his entitlement to FMLA leave. On September 8, Plaintiff was informed by his treating physician that he would be required to undergo a surgical procedure before returning to work. Plaintiff informed his employer, and then had the surgical operation performed on September 16. Although Plaintiff failed to specifically cite his right to leave under the FMLA, Defendant fails to dispute that Newcomb provided notice that he was in need of leave for a serious medical condition, or the anticipated timing and duration of such leave. On September 17, one day after the surgical operation and approximately one week after Plaintiff had exhausted

his accrued leave, Plaintiff was terminated. The Court finds the timing between the two events sufficient to satisfy the causal prong of Plaintiff's prima facie case.

Plaintiff now having established a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate non-retaliatory reason for Plaintiff's termination. Richardson, 434 F.3d at 332. Here, Defendant offers the district-wide reduction in force as a legitimate non-discriminatory reason for Plaintiff's termination. As Defendant points out, it is well established that an employer's reduction in force may constitute a legitimate non-retaliatory reason for termination. EEOC v. Tex. Instr. Inc., 100 F.3d 1173, 1181 (5th Cir. 1996) (articulating that a reduction in force "is itself a legitimate, nondiscriminatory reason for discharge.").

Accordingly, the burden shifts back to Plaintiff to show that the reduction in force was merely pretext for retaliatory animus. Lorentz, 535 F. App'x at 322 (quoting Richardson, 434 F.3d at 332). In order to survive summary judgment, the plaintiff must advance facts to rebut each non-retaliatory reason proffered by the employer. Wallace v. Methodist Hosp. Sys, 271 F.3d 212, 220 (5th Cir. 2001). It is necessary that the plaintiff produce more than subjective conclusions regarding the existence of a retaliatory motive. Little v. Republic Ref. Co., Ltd., 924 F.2d 93, 96 (5th Cir. 1991) (holding that a subjective belief of discrimination is simply insufficient for judicial relief). "Evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of [the] defendant's motive." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (citing Reeves, 530 U.S. at 147-48, 120 S. Ct. 2097.

In support of his contention that the employer's reduction in force explanation was merely pretextual, Plaintiff argues that the District failed to follow its own reduction in force policy, failed to cut a maintenance position slated for elimination, and failed to terminate him at either the end of the academic year or at the end of the fiscal year. As Plaintiff contends, the District's Employment and Retention Procedures stipulate as follows:

> In retaining present employees in case of a reduction in force, the primary consideration shall be to employ and retain the best qualified person, without regard to race, color, national origin, sex, age, religion, or disabling conditions, in order to provide the best quality education possible to the students; and to achieve this objective, the following factors will be considered:
>
> 1. The degree held; and the accreditation level of the institution from which the degree or degrees was received.
> 2. Areas of licensing.
> 3. Years of experience with previous satisfactory service in this school district.
> 4. Total satisfactory experience.
> 5. Ability to perform the required job tasks, with or without reasonable accommodation, as appropriate.
> 6. Personal references concerning prior employment.
> 7. Spouse's employment by this school district.
> 8. Residence of applicant or employee.

When asked why Plaintiff's position was eliminated, as opposed to one of the workers in the maintenance department, Childress testified that the District was "making decisions based on cost savings." Although an employer's disregard for its policies "does not of itself conclusively establish . . . that a nondiscriminatory explanation for an action is pretextual," it may serve as "icing on the cake." Laxton v. Gap, Inc., 333 F.3d 572, 581 n.3 (5th Cir. 2003) (quoting EEOC v. Texas Instr. Inc., 100 F.3d 1173, 1182 (5th Cir. 1996)).

Additionally, Plaintiff points out that none of the other employees laid off as a result of the reduction in force were terminated after the 2010 through 2011 academic year began. According to the evidence before the Court, seven employees were non-renewed at the end of the

2009 through 2010 academic year, while two other employees were non-renewed at the conclusion of the fiscal year. Plaintiff was not terminated until September 17, 2010, well after the commencement of both the next fiscal and academic year. Although Childress declared that Plaintiff was slated for retention through at least the summer because he was needed to help perform bus maintenance, help drive buses, and help with district consolidation efforts, Rogers testified that there was no greater need for bus maintenance or driving assistance during the summer than in any other time of the year.

Moreover, the District's contention that the decision to terminate Plaintiff was made and finalized on May 26, 2010 strains the credulity of the Court. Specifically, Defendant cites the Board minutes from that date, contending that the minutes contain the names of all employees who were to be employed for the following school year. According to Defendant, "[h]ad Plaintiff's position and his employment continued, then his name would have been on that list." The fundamental problem with such a contention, however, is that Plaintiff's employment *did* continue both into the next fiscal year and into the next academic year. Additionally, Rutledge, who the District also slated for termination but then continued to employ, is not listed on the Board's minutes which purportedly contain the names of all 2010 employees. And, although Childress averred that he had decided to *at least* continue Newcomb's employment until the beginning of the academic year, nowhere does the District contend that there was a firm end date for Newcomb's employment in place. See, c.f., Davis v. Dallas Ind. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011) (finding that where employer had employee's end date in place before the plaintiff's protected activity, no causal connection could be had despite the fact that termination was not formalized until after the protected activity). For the foregoing reasons, the Court determines that Plaintiff has established a genuine dispute of material fact as to whether

14

Defendant's proffered legitimate non-retaliatory reason for his termination was merely pretext for unlawful retaliation. Plaintiff's retaliation claim therefore survives the instant motion for summary judgment.

*II. Interference with Prescriptive Entitlement Claim*

In support of his prescriptive entitlement claim, Plaintiff contends that "contrary to the regulations of the United States, Defendant failed to notify Plaintiff of his entitlement to [FMLA] leave following the expiration of the accrued time to which he was entitled" and that "at a time when Plaintiff should have been on Family and Medical leave, and would have been, except for Defendant's failure to notify him of his rights under the [FMLA], Plaintiff was terminated from his employment." In essence, Plaintiff hinges his interference claim on the Defendant's failure to provide him with this entitlement to twelve weeks of leave with a right to reinstatement. Defendant attacks that claim, arguing that harmless violations are not actionable under the FMLA and that Plaintiff cannot show any damage here because the decision to terminate him was made months before his need for FMLA leave arose. Plaintiff, in turn, responds by arguing that "Newcomb was entitled to [twelve] weeks of FMLA leave that he was not given," and that "[i]n denying Newcomb that opportunity, Defendant violated Newcomb's rights protected under the FMLA."

Indeed, in order to state a prima facie prescriptive FMLA interference claim, Newcomb must show that: (1) he was an eligible employee; (2) the District was an employer subject to the FMLA's requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave, and (5) the District denied him the benefits to which he was entitled under the FMLA. Lanier v. Univ. of Tex. Sw. Med. Ctr., 527 F. App'x 312, 316 (5th Cir. 2013) (citing Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012)). Notably, however, that deprivation

must produce actual prejudice. Cuellar v. Keppel Amfels, LLC, 731 F.3d 342, 347 (5th Cir. 2013) (citing Ragsdale, 535 U.S. 81, 89, 122 S. Ct. 1155). Defendant challenges only the final prong, that is, whether Newcomb can show that the District denied him benefits to which he was entitled under the FMLA and that such denial produced prejudice.

As previously stated, an FMLA eligible employee is entitled to twelve weeks of unpaid leave within a twelve-month period if he suffers from a disabling health problem that precludes his ability to work. 29 U.S.C. § 2612(a)(1); Rutland, 404 F.3d at 923. Upon returning from such leave, the employee must generally be restored to the same or an equivalent position. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a); Rutland, 404 F.3d at 923. That right to reinstatement is not absolute, however, and an employee is "not entitled to 'any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" Shirley v. Precision Castparts Corp., 726 F.3d 675, 681 (5th Cir. 2013) (quoting 29 U.S.C. § 2614(a)(3)(B)).

Accordingly, where the employer shows that "the employee would have lost his position even had he not taken FMLA leave," no violation of the Act occurs. Id. at 683; see also Forbes v. Unit Tex. Drilling, LLC, 526 F. App'x 376, 380 (5th Cir. 2013) ("An employee has no right to reinstatement if the employee's prior position has been eliminated."). Additionally, where, at the expiration of the twelve weeks, the employee is unable to perform his previous duties, the employer is under no obligation to reinstate the employee to his previous position or provide an alternative position. Shirley, 726 F.3d at 682 ("It is true that an employer may not fail to reinstate an employee following his return from FMLA leave, but only if the statutory requirements have been satisfied. Among those requirements is one dictating that an employee must actually be entitled to the position to which he seeks reinstatement . . . ."); Johnson v.

16

Houston's Restaurant, Inc., 167 F. App'x 393, 395-96 (5th Cir. 2012) (noting that plaintiff's interference claim could "only survive if, upon return, he was able to perform his previous duties.").

In the case at bar, Defendant argues that Newcomb had no substantive right to reinstatement because his position would have been eliminated during the pendency of any such leave and that the District's failure to notify him of his entitlement to such leave would have been futile for the same reasons. As discussed previously, the Court has determined that there is a genuine dispute of material fact regarding whether Plaintiff's position was actually slated for elimination. Accordingly, that contention is without merit.

Defendant additionally argues, however, that even had Newcomb's position not been eliminated, he would have exhausted his twelve weeks of FMLA leave before he was able to return to work. As reiterated by the Fifth Circuit, to succeed on an interference claim, the plaintiff "must at least show that [defendant] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, *and that the violation prejudiced her*." Cuellar, 731 F.3d at 347 (emphasis added) (citing Ragsdale, 535 U.S. at 89, 122 S. Ct. 1155.

The undisputed evidence before the Court shows that Newcomb remained "totally disabled" until January 18, 2011. According to Plaintiff, he was entitled to FMLA leave until approximately December of 2010. As such, even under Newcomb's view of the facts, Plaintiff would not have been able to return to work when his FMLA leave expired. As in Johnson, Plaintiff therefore would have had no entitlement to reinstatement. 167 F. App'x at 396 (noting that where it was undisputed that plaintiff "was physically incapable of performing the duties previously required of him" at the expiration of his FMLA leave, no violation was triggered by the employer's refusal to reinstate him). That being the case, Plaintiff simply cannot show any

prejudice produced by Defendant's purported violation of the FMLA's entitlement provisions and Plaintiff's interference claim must fail. Cuellar, 731 F.3d at 347; Ragsdale, 535 U.S. 81, 89, 122 S. Ct. 1155 (articulating that 29 U.S.C. § 2617 "provides no relief unless the employee has been prejudiced by the violation."). The Court therefore grants summary judgment in favor of Defendant as to Newcomb's interference claim.

## CONCLUSION

Based on the foregoing reasoning, Defendant's Motion for Summary Judgment [40] is granted in part and denied in part. The motion is denied as to Plaintiff's proscriptive retaliation claim, but granted as to his prescriptive interference claim. Additionally, the parties are granted until May 27, 2014 to provide additional briefing on the continuing viability of the mixed-motive framework at it applies to FMLA retaliation claims.

SO ORDERED, this the 1st day of May, 2014.

                                              **/s/ Sharion Aycock**
                                              **U.S. DISTRICT JUDGE**