**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

ALFRED L. NEWCOMB                                                PLAINTIFF

V.                                          CIVIL ACTION NO. 1:12-CV-00204-SA-DAS

CORINTH SCHOOL DISTRICT                                          DEFENDANT

## MEMORANDUM OPINION

The present action was tried before a jury, and a verdict was returned for Plaintiff Alfred Newcomb on his claim of retaliatory termination in violation of the Family Medical Leave Act ("FMLA") against Defendant Corinth School District ("CSD"). Defendant has filed a Motion for Judgment as a Matter of Law or Alternate Relief [84], and Plaintiff has filed a Motion to Alter or Amend the Judgment [82]. Upon consideration of the motions, responses, rules, and authorities, the Court finds as follows:

### (A) Factual and Procedural History

Newcomb, a former employee in CSD's maintenance and transportation departments, proceeded to trial before a jury against CSD, alleging that he was terminated for taking FMLA qualifying leave following a non-work related injury to his shoulder. At the close of Newcomb's case-in-chief, CSD moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court denied the motion, finding that the evidence created a factual issue as to whether CSD retaliated against Newcomb. The jury ultimately returned a verdict in favor of Newcomb and awarded damages in the amount of $100,000 for "wages, salary, employment benefits, or other compensation denied or lost because of Corinth School District's violation of the FMLA."

Following the verdict and award, CSD filed the present Motion for Judgment as a Matter of Law or Alternate Relief [84], arguing that the Court should render judgment in its favor, grant a new trial, or remit Newcomb's award.[1] Newcomb filed a Motion to Alter or Amend the Judgment [82], arguing that he is entitled to prejudgment interest, liquidated damages, and either reinstatement or front pay as a result of the jury's finding of retaliation. The Court addresses each contention in turn.

### *(B) CSD's Rule 50 Motion for Judgment as a Matter of Law*

Federal Rule of Civil Procedure 50(b) allows a defendant to file a renewed motion for judgment as a matter of law following a verdict for the plaintiff, as CSD has done here. Judgment as a matter of law is warranted under Rule 50 if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue[.]" FED. R. CIV. P. 50(a)(1). The standard under Rule 50 "mirrors" the standard for summary judgment under Rule 56 "such that the inquiry under each is the same." Reeves v. Sanderson Plumbing, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (internal quotation and citation omitted). When ruling on a Rule 50 motion, the Court must "view the trial evidence in the light most favorable to the nonmovant, making all reasonable and factual inferences and credibility assessments in the nonmovant's favor." Illinois Cent. R.R. Co. v. Guy, 682 F.3d 381, 393 (5th Cir. 2012). The Court must uphold the verdict unless "the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" Flowers v. S. Reg'l Physical Servs. Inc., 247 F.3d 229, 235 (5th Cir. 2001) (quoting Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1322 (5th Cir. 1994)).

---

[1] The Court treats each of CSD's requests as separate motions.

<u>Sufficiency of the Evidence</u>

Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave within a twelve month period if he suffers from a disabling health problem that precludes his ability to work. 29 U.S.C. § 2612(a)(1). The FMLA's retaliation provision makes it unlawful to "discharge or in any other manner discriminate against any individual" for taking such leave. 29 U.S.C. § 2615(a)(1). A plaintiff may prove FMLA retaliation by producing direct evidence, <u>Herron v. Baptist Mem'l Healthcare Corp.</u>, 2007 WL 2579972, at *1 (N.D. Miss. Sept. 4, 2007), or through circumstantial evidence of a retaliatory motive. <u>Richardson v. Monitronics Int'l, Inc.</u>, 434 F.3d 327, 332 (5th Cir. 2005). Because the "case has been fully tried on its merits, [the Court] does not focus on the <u>McDonnell Douglas</u> burden-shifting scheme" but inquires "whether the record contains sufficient evidence to support the jury's ultimate findings." <u>Bryant v. Compass Grp. USA Inc.</u>, 413 F.3d 471, 475-76 (5th Cir. 2005).

It is uncontested that CSD slated Newcomb's position for elimination in May 2010 as part of a Board-approved reduction-in-force plan. However, Newcomb continued his employment with CSD until he received a letter of termination on September 17, 2010, approximately seven weeks after he injured his shoulder and just one day after he underwent surgery. CSD maintains that, because the reduction-in-force was adopted in May, well before Newcomb's injury or leave, the decision to terminate him could not have been infected by a retaliatory motive.

The evidence at trial, however, showed that the plan was not rigidly applied. According to a list of non-renewals introduced by CSD, the majority of employees who were scheduled for termination as part of the reduction-in-force were terminated either at the end of May 2010 or the first day of July 2010. But Mike Rutledge, an employee in CSD's maintenance department who

was originally among those scheduled for termination, was still employed with CSD at the time of trial. This was because Rutledge's supervisor, Brent Avent, convinced the Superintendent, Lee Childress, to retain Rutledge, according to the testimony of both Avent and Childress.

Additionally, Newcomb, remained employed until mid-September, a full two-and-a-half months after CSD had terminated every other person listed on the non-renewal list.[2] To explain why Newcomb was not terminated along with the others, his immediate supervisor Nat Rogers testified that he pleaded with Childress to retain Newcomb because the transportation department needed Newcomb's assistance. Childress corroborated Rogers' testimony on this point and explained that CSD would have "worked [Newcomb] through part of August *or it would have been determined once things settled down . . . .*" (emphasis added).

Therefore, even though the Board decided to terminate Newcomb as part of the reduction-in-force plan adopted in May, the evidence demonstrated that Superintendent Childress retained a level of decision-making authority to determine if and when employees would be terminated. Given Childress' previous deviations from the plan and the absence of a firm end date in place for Newcomb, there is simply no conclusive evidence as to when Newcomb was to be terminated pursuant to the reduction-in-force or even that he definitively was to be terminated. See c.f., Davis v. Dallas Ind. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011) (holding that where employer had employee's end date in place before the plaintiff's protected activity, no causal connection could be had even though termination was not formalized until after the protected activity took place). The Court concludes that, based on the evidence adduced at trial, a reasonable jury was entitled to find that the final decision to terminate Newcomb occurred sometime *subsequent* to the Board's meeting in May.

---

[2] Only names of employees who were actually terminated appear on the non-renewal list. Rutledge's name is absent.

Thus, the door was opened for the jury to consider, as evidence of retaliation, the close temporal proximity between Newcomb's FMLA leave and his termination. See Mauder v. Metr. Trans. Auth. of Harris Cnty., 446 F.3d 574, 583 (5th Cir. 2006) ("When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination."); Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992) (deeming suspicious timing as "one of the elements" supporting a retaliatory finding). The jury was additionally entitled to consider the following excerpt from Childress' testimony concerning the timing of Newcomb's termination:

> Q. Okay. Now, let me see if I understand. Normally when you let somebody go, you let them go when you decide you no longer need their services?
>
> A. In terms of the job that they are doing, that would be correct.
>
> Q. Well, in this case, you would have known that you didn't need Mr. Newcomb's service when he was unable to work because of his injury, wouldn't you sir?
>
> A. That would be the case.

In light of the evidence that Childress retained decision-making authority with regard to Newcomb's termination, the close temporal connection between Newcomb's leave and his termination, and Childress' testimony that he decided he no longer needed Newcomb's services following the injury that precipitated Newcomb's leave, the Court finds a sufficient evidentiary basis to support the jury's finding of FMLA retaliation.[3]

---

[3] CSD also argues that Plaintiff's counsel impermissibly attacked CSD's business judgment by generally focusing on Newcomb's value as a CSD employee throughout examination and closing remarks, and that evidence of Newcomb's competence both prejudiced the jury and was insufficient to support its finding of retaliation. The Court, however, had no opportunity to rule on the relevance or prejudice of any particular questioning and remarks because, after the Court reserved the issue for trial in its Order on CSD's Motion in Limine [67], CSD failed to lodge an objection with the Court. And, as reflected above, the Court finds the jury's verdict sustainable even without the "business judgment" evidence to which CSD refers.

<u>Prejudice Suffered</u>

CSD alternately argues that even if the jury's finding of retaliation is supported, the verdict should nonetheless be overturned because Newcomb's leave would have expired before he was able to return to CSD, and that he accordingly suffered no prejudice by the FMLA retaliation.

As stated earlier, an eligible employee is entitled to twelve weeks of unpaid leave within a twelve month period. 29 U.S.C. § 2612(a)(1). Although an employer generally is required to restore the employee to the same or an equivalent position upon returning from such leave, 29 U.S.C. § 2614(a)(1), if the employee is unable to perform his duties at the expiration of the twelve weeks, he is not entitled to such reinstatement. <u>Johnson v. Houston's Rest., Inc.</u>, 167 F. App'x 393, 396 (5th Cir. 2006). Moreover, the FMLA authorizes relief for lost compensation incurred "*by reason of the violation*[.]" 29 U.S.C. § 2617(a)(1)(A)(i)(I) (emphasis added). Interpreting this provision, the Supreme Court has clearly held that an employee may obtain "no relief unless [he] has been prejudiced by the violation[.]" <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002); <u>see</u> <u>also</u> <u>Cuellar v. Keppel Amfels, LLC</u>, 731 F.3d 342, 347 (5th Cir. 2013).

It is undisputed that Newcomb's leave began immediately after his injury on August 2, 2010. CSD highlights a series of doctor's notes indicating that Newcomb was "totally disabled" until January 18, 2011. Thus, based on these notes, CSD argues that Newcomb's twelve weeks of leave would have expired before he was able to return to work.

However, at trial, Newcomb explained that the doctor's notes on which CSD relies did not accurately reflect his medical condition and were signed, not by his doctor, but by support staff at the doctor's office. Specifically, Newcomb testified that, in an effort to draw payments

under his former disability insurance policy with CSD, he would tell the receptionist "nothing has changed" regarding his ability to work. According to Newcomb, the receptionist would then, without questioning him, sign the note indicating that Newcomb was totally disabled. At trial, however, Newcomb testified that he was, in fact, able to return to his position at CSD sometime in September 2010, well within the period covered by the FMLA.

In light of Newcomb's testimony, the Court finds that the evidence introduced created a genuine issue of material fact as to when Newcomb would have been able to return to work and thus whether he would have been entitled to reinstatement upon his return. See 29 U.S.C. § 2614(a)(1). Accordingly, the Court concludes that the jury's determination of prejudice caused by CSD's FMLA retaliation was sufficiently supported by the evidence presented. CSD's motion for judgment as a matter of law is therefore DENIED.

### *(C) CSD's Rule 59 Motion for a New Trial*

Alternatively, CSD moves for a new trial. Federal Rule of Civil Procedure 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). Grounds for a new trial, while "undefined by the Rule" include situations where "the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." Weckesser v. Chi. Bridge & Iron, L.G., 447 F. App'x 526, 529 (5th Cir. 2011) (quoting Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985)).

CSD maintains that prejudicial error was committed in several respects with regard to the Court's jury instructions. To successfully challenge a jury instruction, CSD "must demonstrate that the charge as a whole create[d] substantial and ineradicable doubt whether the jury has been

properly guided in its deliberations." Hartsell v. Dr. Pepper Bottling Co. of Tex., 207 F.3d 269, 272 (5th Cir. 2000) (quoting Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997)). But even if substantial and ineradicable doubt is shown, the instruction should still be upheld as long as the Court determines "based upon the entire record, that the challenged instruction could not have affected the outcome of the case." Id.

FMLA Mixed-Motive Instruction

CSD first argues that the Court erred by issuing the following "mixed-motive" causation instruction:

> Ultimately, if you find that Newcomb's termination was motivated by his FMLA qualified leave **and** other lawful reasons, then you must decide whether Newcomb's FMLA qualifying leave was a motivating factor in Corinth School District's decision to terminate him. If you find Newcomb's FMLA leave was a motivating factor in Defendant's decision to terminate him, even though other considerations were factors in the decision, then you must determine whether Corinth School District proved by a preponderance of the evidence it would have made the same decision even if it had not considered Newcomb's FMLA leave in its decision. If you find that Corinth School District would have made the same decision even if it had not considered Newcomb's FMLA leave, then you must find for Defendant.

CSD contends that this instruction wrongly allowed the jury to premise liability upon a finding that Newcomb's FMLA protected leave was merely a motivating factor in its decision to terminate him. It argues that in FMLA retaliation suits, the employee must prove that the protected leave was the "but-for" cause of the adverse employment action.

The Fifth Circuit has previously considered the causation standard applicable to FMLA retaliation claims. Richardson, 434 F.3d at 334-35. In Richardson, the Court extended prior Supreme Court and Fifth Circuit decisions providing for a mixed-motive framework within Title VII and the Age Discrimination and Employment Act ("ADEA"), unambiguously stating that retaliation claims under the FMLA are "reviewed under a mixed-motive analytical framework."

*Id.* CSD recognizes this holding, but argues that subsequent Supreme Court cases have significantly eroded Richardson's foundation.

Indeed, the Supreme Court made clear in 2009 that a mixed-motive instruction is never proper in an ADEA case and thus abrogated in part the Fifth Circuit precedent on which Richardson was based. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 179-80, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). And four years later, the Supreme Court held the mixed-motive framework likewise inapplicable to Title VII retaliation claims. Univ. of Tex. Sw. Med. Ctr. v. Nassar, --- U.S. ---, 133 S. Ct. 2517, 2528-2534, 186 L. Ed. 2d 503 (2013). Since then, the Fifth Circuit has implicitly recognized and this Court has expressly noted that Richardson's foundation is unstable and the standard that plaintiffs must prove for FMLA retaliation claims is uncertain within the Fifth Circuit. See Ion v. Chevron USA, Inc., 731 F.3d 379, 390 (5th Cir. 2013) ("We emphasize that we need not, and do not, decide whether Nassar's analytical approach applies to FMLA-retaliation claims . . . ."); Johnson v. Benton Cnty. Sch. Dist., 926 F. Supp. 2d 899, 906 (N.D. Miss. 2013) ("[D]istrict courts in this circuit simply have no clear idea how they should instruct juries regarding what causation standard is applicable" for FMLA retaliation claims).

Notwithstanding concerns about Richardson's validity, this Court is in no position to depart from such a clear pronouncement by the Fifth Circuit. In analogous circumstances, for example, the Supreme Court has explained: "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989). Similarly, in the Fifth Circuit, absent a statutory amendment or a Supreme Court case that "unequivocally overrule[s] prior precedent[,]" one

panel may not reverse a prior panel's decision. <u>Tech. Automation Serv. Corp. v. Liberty Surplus Ins. Corp.</u>, 673 F.3d 399, 405 (5th Cir. 2012) (quoting <u>Martin v. Medtronic, Inc.</u>, 254 F.3d 573, 577 (5th Cir. 2001)). There is no such unequivocal overruling here because <u>Nassar</u> and <u>Gross</u> dealt with different statutes, such that their holdings do not automatically import into the FMLA. See <u>Hunter v. Valley View Local Sch.</u>, 579 F.3d 688, 691 (6th Cir. 2009) (reaffirming the FMLA's mixed-motive framework even after the Supreme Court's decision in <u>Gross</u>). Therefore, "<u>Richardson</u> is still the law in this circuit," and "the Court is bound to follow it and apply the mixed-motive framework . . . ." <u>Kendall v. Walgreen Co.</u>, 2014 WL 1513960, at *6 (W.D. Tex. Apr. 16, 2014).

CSD alternately argues that, even if the mixed-motive framework is generally available, the Court's instruction was errant because Newcomb did not concede that CSD possessed any legitimate reasons for his termination. In other words, CSD argues that it was inappropriate for the Court to give both a pretext instruction and mixed-motive instruction.

CSD attempts to support this argument by citing a statement from <u>Richardson</u>, in which the Fifth Circuit articulated that the mixed-motive framework "applies to cases in which the employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination." 434 F.3d at 333. The Fifth Circuit has since clarified, however, that the Court in <u>Richardson</u> was merely setting forth context for the application of the mixed-motive framework; it was not defining the outer limits of the applicability of a mixed-motive instruction. <u>Smith v. Xerox Corp.</u>, 602 F.3d 320, 333 (5th Cir. 2010), <u>abrogated on other grounds by</u>, <u>Nassar</u>, 133 S. Ct. 2517, 186 L. Ed. 2d 503. The Fifth Circuit explained that the plaintiff is *not* required to first concede that the employer had legitimate reasons in order to be entitled to the mixed-motive instruction. <u>Id.</u> Accordingly, the

Court finds that its causation instruction was consistent with Fifth Circuit precedent and therefore not in error.

### CSD's Leave Policy

CSD next argues the Court erred by failing to instruct the jury regarding a particular FMLA regulation concerning paid and unpaid leave. At trial, Childress testified that FMLA leave and accrued paid leave run concurrently at CSD. During the jury instruction conference, CSD requested that the Court instruct the jury that this practice was legal in accordance with 29 C.F.R. § 825.207, under which an "employer may require the employee to substitute accrued paid leave for unpaid FMLA leave." The Court refused the proposed instruction. CSD now argues that it was necessary to cure confusion and prejudice caused when Newcomb's attorneys, during direct examination and closing arguments, "gave the appearance as though CSD had violated the FMLA by using this policy."[4]

It is the Court's duty to "instruct the jurors, fully and correctly, on the *applicable* law of the case, and . . . guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth." Bender v. Brumley, 1 F.3d 271, 276 (5th Cir. 1993) (alteration in original) (emphasis added) (citation and quotation omitted). There is no need, however, "for an instruction . . . on an issue not presented by the pleadings nor effectively raised at the trial." Rohner, Gehrig & Co. v. Capital City Bank, 655 F.2d 571, 577 (5th Cir. 1981) (citation omitted). The issue in this case—whether CSD intentionally retaliated by terminating Newcomb—had nothing to do with the FMLA regulations that govern leave. The Court is not required to instruct the jury on inapplicable law. See id. at 577; see also Hardy v. City of Tupelo, Miss., 2009 WL 3678262, at *18 (N.D. Miss. Nov. 2, 2009) (finding that

---

[4] During trial, CSD did not lodge an objection to the allegedly prejudicial line of questioning or closing statement remarks. See FED. R. EVID. 403.

refusing to issue a jury instruction was proper when, among other things, the legal doctrine was not relevant to a determination before the jury). Therefore, the Court finds that its refusal to give the requested instruction was not in error.

Mitigation Instruction

CSD also argues that two errors were committed in regard to the Court's instruction concerning the defense of failure-to-mitigate. It first contests the following language:

> The burden of proof is on the Defendant to prove that Plaintiff failed to mitigate his damages. To prove a lack of mitigation a defendant must prove that a plaintiff unreasonably failed to seek other employment. Defendant must prove there were jobs available which Plaintiff did not seek and could have obtained had he tried to obtain them.

Under the FMLA, a successful plaintiff has "a duty to mitigate." Morgan v. Neiman-Marcus Grp., Inc., 2005 WL 3500314, at *8 (N.D. Tex. Dec. 20, 2005) (citation omitted); see also West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003). As an affirmative defense, proving a failure-to-mitigate is the employer's burden. West, 330 F.3d at 393 (citation omitted). To succeed on this defense, an employer must demonstrate that (1) "substantially equivalent work" existed, and (2) the plaintiff failed to exercise reasonable diligence to obtain the work. Id.

CSD argues that in order to succeed on its failure-to-mitigate defense, it was required only to prove that Newcomb failed to seek other employment, but not the availability of other substantially equivalent work. To support this argument, CSD cites Sellers v. Delgado Cmty. Coll., 902 F.2d 1132, 1139 (5th Cir. 1988), a Fifth Circuit panel decision, in which the Court stated "[i]f an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment."

Earlier, however, a different Fifth Circuit panel explained that "[t]he defendant . . . has to show not only that the plaintiff . . . failed to use reasonable care and diligence, but that there were jobs available which [the plaintiff] could have discovered and for which [he] was qualified." <u>Sparks v. Griffin</u>, 460 F.2d 433, 443 (5th Cir. 1972) (quotation and citation omitted). In that case, the district court found a failure-to-mitigate because the plaintiff failed to exercise reasonable diligence, but the Fifth Circuit reversed solely because the employer was unable to prove the second prong of its defense—the existence of substantially equivalent employment. <u>Id.</u> Thus, the Fifth Circuit's earlier holding with regard to mitigation in <u>Sparks</u> rested exclusively on grounds purportedly rejected by its subsequent decision in <u>Sellers</u>.

Importantly, the <u>Sellers</u> Court did not cite to <u>Sparks</u> or any other Fifth Circuit precedent in reaching its conclusion. <u>Sellers</u>, 839 F.2d at 1139. And as previously noted, the Fifth Circuit has explained that under its "rule of orderliness . . . 'one [5th Circuit panel] cannot overrule the decision of another panel.'" <u>U.S. v. Dial</u>, 542 F.3d 1059, 1060 (5th Cir. 2008) (applying an earlier panel decision when faced with subsequent panel decisions inconsistent with the earlier precedent). Thus, because <u>Sparks</u> represents the earlier statement regarding mitigation, it remains the law until overruled by the Fifth Circuit <i>en banc</i>. <u>Little v. Tech. Specialty Prods., LLC</u>, 2014 WL 1116895, at *2 (E.D. Tex. Mar. 18, 2014) (citing <u>Dial</u>, 542 F.3d at 1060) (other citation omitted). Consistent with <u>Sparks</u>, other district courts within the Fifth Circuit have required the employer to prove both that the plaintiff failed to exercise reasonable diligence and that other jobs were available. <u>Little</u>, 2014 WL 1116895, at *2 (citing four Texas district court cases that applied the standard from <u>Sparks</u>); <u>see also</u> <u>Bertrand v. City of Lake Charles</u>, 2012 WL 1596706, at *8 n.33 (W.D. La. May 3, 2012); <u>EEOC v. IESI La. Corp.</u>, 720 F. Supp. 2d 750, 755 n.2

(W.D. La. 2010). For these reasons, the Court concludes that CSD was required to prove both prongs of the failure-to-mitigate defense, and that the contested instruction was not errant.

CSD also objects to a different portion of the Court's mitigation instruction. Following his termination with CSD, Newcomb began his own air conditioning business, and thus the Court instructed: "Additionally, self-employment *may* be a reasonable alternative to seeking other employment for purposes of mitigation." (emphasis added). CSD posits that, based on this instruction, an average juror would overlook the permissive nature of the word "may" and would assume the Court was instructing that Newcomb's business definitively constituted a reasonable alternative to seeking other employment.

Importantly, however, the contested sentence is nearly verbatim to language found in a Fifth Circuit case addressing the duty to mitigate. See Hill v. City of Pontotoc, Miss., 993 F.2d 422, 427 (5th Cir. 1993) ("Self-employment may be a reasonable alternative to seeking other employment for purposes of mitigation."). Additionally, the Court does not agree that an average juror would fail to understand the distinction between "may" and "shall," and CSD has cited no authority in support of its contention.

The Court finds that the mitigation instruction given was, on the whole, an accurate statement of the law. Finding no error with regard to any contested instruction, CSD's request for a new trial is DENIED.

### *(D) CSD's Motion for Remittitur*

CSD alternately moves to remit the jury's award of $100,000. Within the Fifth Circuit, the decision of whether to reduce a jury's award "rests in the sound discretion of the district judge . . . ." Consol. Cos. v. Lexington Ins. Co., 616 F.3d 422, 435 (5th Cir. 2010) (citation omitted). While the Court "should defer to the jury's findings," it is an abuse of discretion to

"enter[] judgment on a verdict unsupported by evidence." <u>Vaughn v. Sabine Cnty.</u>, 104 F. App'x 980, 985 (5th Cir. 2004). Only an award that is excessive or appears to contradict reason is subject to remittitur. <u>Brunnemann v. Terra Intern., Inc.</u>, 975 F.2d 175, 178 (5th Cir. 1992) (citing <u>Wells v. Dall. Indep. Sch. Dist.</u>, 793 F.2d 679, 683 (5th Cir. 1986)). If an award exceeds "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury" the verdict is "excessive as a matter of law . . . ." <u>Id.</u> (quotation and citation omitted).

If a remittitur is found to be appropriate, then the Court "determine[s] the size of the remittitur in accordance with the 'maximum recovery rule,' which prescribes that the verdict must be reduced to the maximum amount the jury could have properly awarded." <u>Id.</u> (quoting <u>Hansen v. Johns—Manville Prods. Corp.</u>, 734 F.2d 1036, 1047 (5th Cir. 1984)). The Fifth Circuit has explained that the purpose of the "maximum recovery rule" is to afford proper deference to the jury's decision. <u>Thomas v. Tex. Dep't of Criminal Justice</u>, 297 F.3d 361, 369 (5th Cir. 2002).

Lost Compensation at CSD

The FMLA's back pay provision authorizes damages equal to "wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . . ." 29 U.S.C. § 2617(a)(1)(A)(i). The parties agree the jury's $100,000 figure exceeds the amount available to Newcomb based on the evidence presented. They further agree that Newcomb's maximum potential recovery under the back pay provision is represented by the wages that he would have earned at CSD had he not been terminated, over the time period between his final day on the job and the date of the Court's judgment.

Nevertheless, there is some confusion concerning this amount. CSD urges the Court to project the salary Newcomb would have earned (based on his 2009 salary at CSD) from the time

he was terminated until the day he received a judgment, which would result in an amount over $80,000. The Court agrees this is a valid way to determine the amount of compensation supported by the evidence. Complicating the issue, however, is Newcomb's briefing, in which it is erroneously asserted that Newcomb testified at trial to having lost income of "$73,800." This figure appears nowhere in the trial transcript, and it is not clear from what source Newcomb derived that amount. Predictably, in its reply, CSD agrees to the lower number Newcomb suggests.

The threshold question, therefore, is whether the parties may agree that damages, which were awarded by the jury and supported by the evidence, should nonetheless be reduced. On this issue, in a case arising under the ADEA, the Fifth Circuit stated in dicta that "the parties should be able to agree to the amount that [the plaintiff] would have been compensated had he remained employed . . . ." West, 330 F.3d at 395 n.15.

Importantly, however, the Fifth Circuit panel viewed the relief in that case as equitable in nature such that the judge was entitled to decide the back pay issue. Id. at 395. Conversely, damages for lost wages under the FMLA are legal in nature, expressly authorized by statute and an issue for the jury to decide. Hardtke v. The Hartford, 2006 WL 503952, at *2 (W.D. Tex. Jan 5, 2006) ("determin[ing] that the FMLA includes the right to trial by jury") (quoting Frizzell v. Sw. Motor Freight, 154 F.3d 641, 644 (6th Cir. 1998) (explaining "Congress's intent to create a right to jury trial in the FMLA" evident from its remedial structure, "the reference in the FMLA's legislative history to the Fair Labor Standards Act [which provides for a jury trial] and other fragments of FMLA legislative history")); see also Fifth Circuit Civil Jury Instructions, No. 11.22(a) (2014 ed.) (Under the FMLA, "[a] jury trial is appropriate to decide back pay, but equitable issues such as reinstatement and front pay should be decided by the court."). While the

Court may have discretion to accept the parties' calculations when levying an equitable remedy, West, 330 F.3d at 395 n.15, reducing the jury's back pay award here based, not on lack of evidence, but on agreement by the parties, would reflect an impermissible disregard for the jury's findings.

Therefore, in order to conform the jury's award to an amount supported by the evidence, the Court will follow CSD's initial proposal and extrapolate Newcomb's annual salary at CSD over the relevant time period. According to Newcomb's 2009 tax return, which was corroborated by his testimony, he earned $22,028 in wages per year while working at CSD.[5] The evidence established that Newcomb was terminated on September 17, 2010, and the date of judgment was June 12, 2014. Between these two dates, three years and two hundred sixty-eight days elapsed. This time frame, multiplied by Newcomb's salary, results in evidence of $82,257.98, and thus the maximum recovery available for back pay in lost wages before any offsetting amounts.[6] Therefore, the Court initially reduces the jury award to reflect this amount and will address CSD's arguments that it should be further remitted.

Self-Employment

CSD contends that, on a variety of legal bases, Newcomb's actions in seeking and obtaining self-employment provide grounds for additional remittitur. CSD's first argument in this regard is that Newcomb's actions in seeking self-employment constituted a failure-to-mitigate. As stated previously, an FMLA plaintiff "is under a duty to mitigate." Morgan, 2005 WL 3500314, at *8 (citation omitted). The Fifth Circuit has explained, however, that even

---

[5] Neither party has argued or submitted evidence that Newcomb's salary would have subsequently increased or decreased at CSD had he not been terminated.

[6] (3 years)($22,028) + (268 days / 365 days)($22,028) = $82,257.98. See Hardy, 2009 WL 3678262, at *19 n.4 (employing an identical formula to arrive at the back pay award supported by the evidence).

though the duty to mitigate lies with the plaintiff, proving a failure-to-mitigate is the employer's burden. West, 330 F.3d at 393. As discussed in depth above, to carry this burden, the employer must demonstrate "that substantially equivalent work was available and that the former employee did not exercise reasonable diligence to obtain it . . . ." Id.

Newcomb testified that, following his termination at CSD, he consulted with the "employment office" and learned that no jobs in his field existed, but that he would be eligible for a grant to assist him in earning a degree. Newcomb then pursued and received the grant, attended college for two years, and began his own air conditioning business, which he maintained at the time of trial. CSD did not present evidence that would show Newcomb failed to exercise reasonable diligence or even cross-examine him about his preliminary job search with the employment office. Additionally, the only evidence of other available employment was Childress' testimony that Newcomb could have obtained a position in the custodial staff at one of CSD's schools, earning less than seventy percent of his former wages. The Court is thus persuaded that the jury was not compelled to find a failure-to-mitigate. See id.

CSD alternately argues that Newcomb's award should be tolled during the time period of his self-employment. To that end, the Fifth Circuit has explained in the context of the ADEA that "[b]ack pay is tolled (that is, not awarded) for the period of time the plaintiff is employed in a comparable position." Palasota v. Haggar Clothing Co., 499 F.3d 474, 486-87 (5th Cir. 2007) (parenthesis in original) (citing Brunnemann, 975 F.2d at 178 n.5). CSD asserts that for the jury to have found that Newcomb properly mitigated his damages, it must have necessarily found that his air conditioning business constitutes a comparable position, which precludes Newcomb's right to recover back pay beginning at his business's inception.

As previously discussed, however, the jury was entitled to find that CSD was unable to prove its failure-to-mitigate defense by concluding that CSD failed to prove the existence of substantially equivalent employment. See Sparks, 460 F.2d at 443. Additionally, Newcomb contradicted CSD's asserted defense by testifying that he arrived at the employment office and learned that no jobs were available in his field before pursuing his self-employment. The Court finds this to be evidence of reasonable diligence *apart from* Newcomb's decision to begin his own business. Thus, there are at least two independent bases by which the jury could find that CSD failed to carry its burden, even without concluding that Newcomb's self-employment was "substantially equivalent" to his position at CSD. His award is therefore not tolled on this basis. See Palasota, 499 F.3d 486-87.

Although the Court finds that Newcomb's air conditioning business does not sever his right to recover back pay, the parties agree that any wages Newcomb earned through his business during the back pay period should be subtracted from his award. The Fifth Circuit has held that, under the ADEA and Fair Labor Standards Act ("FLSA"), "courts must offset lost wage awards with post-termination earnings." Johnson v. Martin, 473 F.3d 220, 222 (5th Cir. 2006). It has also instructed that "[b]ecause the remedies available under the ADEA and the FMLA both track the FLSA, cases interpreting remedies under the statutes should be consistent." Lubke v. City of Arlington, 455 F.3d 489, 499 (5th Cir. 2006). Accordingly, the Court finds the precedent requiring an offset for interim earnings to be applicable in the FMLA context. See Johnson, 473 F.3d at 222.

Among the documents admitted at trial are Newcomb's IRS filings for 2011-2013, which show net business income of $1,080.[7] However, Newcomb testified at trial that he earned

---

[7] 2011 net business income ($-254) + 2012 net business income ($1,000) + 2013 net business income ($334) = $1,080.

"around $8,700" or "$9,000" in 2013 alone. Newcomb argues that the Court should look to his tax returns to ascertain the amount of the interim-wage reduction, while CSD argues that the Court should reduce the award by the greater amount, evinced in his testimony.

In the face of such conflicting evidence, the Court finds that there was a genuine issue of material fact presented for the jury at trial. That is, the jury was entitled to believe either the tax filings, which listed fixed amounts and were sworn under penalty of perjury, or Newcomb's in-court testimony. <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000) (citing <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (<i>en banc</i>)) ("[I]t is the function of the jury to weigh conflicting evidence and inferences . . . ."). Importantly, "[a] jury award is entitled to great deference and should not be disturbed unless it is entirely disproportionate to the injury sustained." <u>Green v. Adm'rs of Tulane Educ. Fund</u>, 284 F.3d 642, 650, 658-59 (5th Cir. 2002), <u>abrogated on other grounds by</u> <u>Burlington N. & Santa Fe. Ry. Co. v. White</u>, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Out of deference to the jury's verdict and in accordance with the maximum recovery rule, the Court reduces the back pay award by $1,080 for Newcomb's interim earnings from 2011 until 2013.

CSD argues the award should be further reduced by Newcomb's 2014 earnings preceding the date of judgment. But unlike the documentation for years 2011-2013, there was no tax return or other document presented at trial evincing Newcomb's earnings for 2014. Newcomb did testify that his business "has been growing a little bit," but the Court finds this statement speculative as to the issue of actual earnings. Businesses use a variety of metrics to measure growth, and it is anything but clear from Newcomb's testimony that he was referring to net profit. Thus, the Court has found no evidence that establishes with any reasonable certainty the existence or the extent of Newcomb's earnings for 2014.

To solve this problem, CSD requests that the Court require Newcomb to submit "a more exact amount of his interim earnings from 2014." Yet, the Fifth Circuit explained in a Title VII case that "the burden of producing further evidence . . . in order to establish the amount of interim earning . . . properly falls to the defendant." Marks v. Prattco, Inc., 633 F.2d 1122, 1125 (5th Cir. 1981) (citations omitted). In view of the evidence presented at trial, the jury was entitled to find that CSD failed to prove Newcomb's interim earnings, if any, in 2014.

Therefore, the Court concludes that Newcomb's self-employment does not preclude his right to recover, but that his award is reduced by $1,080, the amount conclusively established at trial that Newcomb earned through his business.

College Attendance

It is undisputed that following Newcomb's termination, he decided to attend college where he received the aforementioned grant, studied refrigeration and air conditioning, and earned a certificate. CSD argues this decision to enroll in school severed Newcomb's right to recover back pay, and that his award is subject to remittitur for that decision.

The Fifth Circuit has twice considered the effect that the decision to pursue higher education has on an employment discrimination award. The first case followed a bench trial in which a former nurse prevailed against her former employer under Title VII on a theory of gender-based discrimination. Floca v. Homcare Health Servs., Inc., 845 F.2d 108 (5th Cir. 1988). The district judge awarded no front pay because the plaintiff entered law school before the lower court entered final judgment in the case. Floca, 845 F.2d at 112-13. In affirming the district judge's decision, the Fifth Circuit reasoned that the plaintiff received compensation by attending school in the form of an opportunity for greater future earnings in her legal career and that she accordingly suffered no damages while she was at school. Id. at 113 (citing Taylor v. Safeway

Stores, Inc., 524 F.2d 263, 268 (10th Cir. 1975) (noting the effect of school attendance as "curtailing present earning capacity in order to reap greater future earnings")) (other citation omitted). Accordingly, the Floca Court affirmed the judge's ruling under a compensation-based theory, in which any potential award was offset by what the plaintiff *actually received* through enhanced opportunity. See id.

In the present case, Newcomb testified that he decided to obtain his degree and change his field of work "because they had nothing in the employment office that I could—anything out there in that field you know. It was just empty for my ability to work." Thus, unlike the plaintiff in Floca, Newcomb did not necessarily seek to enhance his career through the prospect of greater future benefits. Indeed, Newcomb has earned a smaller annual salary following his time in school than he earned while employed with CSD. The Court finds Newcomb's decision to obtain his certificate in air conditioning to be distinguishable from the Floca plaintiff's decision to obtain her law degree.

The second Fifth Circuit case involving the effect of school enrollment was an appeal from a jury trial in which the plaintiff prevailed against her employer for sexual harassment under Title VII and was awarded both front pay and back pay. Green, 284 F.3d at 650, 658-59. The University, citing Floca, argued that the awards should be reduced because, following the plaintiff's tenure at Tulane, she entered nursing school, earned her degree, and obtained a higher paying job. Id. at 658-59. The Fifth Circuit disagreed and affirmed all damages. Id. Specifically with respect to the back pay award, the Fifth Circuit noted that "[t]he jury was instructed on the duty to mitigate[,]" and nonetheless found a Title VII violation. Id. at 659. Thus, unlike in Floca, the Fifth Circuit did not apply a compensation-based theory, but instead focused on whether the plaintiff mitigated her damages. Id.

Like in <u>Green</u>, the jury here was instructed on the duty to mitigate, and therefore had ample opportunity to consider Newcomb's efforts in seeking comparable employment. And as the Court has explained above, the evidence provided a sufficient basis for the jury to reject CSD's failure-to-mitigate defense. Additionally, this case, like <u>Green</u>, involves a jury's award of back pay, whereas the <u>Floca</u> Court merely affirmed the judge's decision not to award front pay. Accordingly, the Court finds that this case more closely resembles <u>Green</u> than <u>Floca</u> and that Newcomb's decision to attend college does not provide grounds for a reduction of the back pay award.

<u>Unemployment Compensation</u>

Finally, CSD urges that remittitur is appropriate to the extent that Newcomb received unemployment compensation following his termination at CSD. Under Fifth Circuit precedent, district courts have discretion to reduce employment discrimination awards by amounts "received from other sources, including sums received from third parties." <u>Smith v. Office of Pers. Mgmt.</u>, 778 F.2d 258, 263 (5th Cir. 1985). This principal has been held to apply to unemployment benefits. <u>Marshall v. Goodyear Tire & Rubber Co.</u>, 554 F.2d 730, 736 (5th Cir. 1977).

Newcomb argues the Court should follow the collateral source rule. Under this common-law doctrine, an award is not to be reduced by "payments made to a plaintiff by third parties." <u>Hardy</u>, 2009 WL 3678262, at *20 (citing <u>Guthrie v. J.C. Penny Co., Inc.</u>, 803 F.2d 202, 210 (5th Cir. 1986)). Generally speaking, unemployment compensation, which comes from the state, is a third party fund to which the collateral source rule may prohibit a reduction. <u>See</u> <u>Gullet Gin</u>, 340 U.S. at 364, 71 S. Ct. 337 (considering "unemployment compensation" to be "collateral benefits which employees may have received"); <u>see also</u> <u>Dufresne v. J.D. Fields & Co.</u>, 2001 WL

1287122, at *2 (E.D. La. Oct. 22, 2001) (finding that unemployment compensation benefits "are a collateral source that should not be deducted from back pay" under Title VII). However, Childress has submitted an undisputed declaration stating that CSD is a self-insured employer and that it reimbursed the state for unemployment benefits paid to Newcomb. Thus, unlike the situation where the employer contributes to a general unemployment fund, see Guthrie, 803 F.2d at 209, CSD was liable for Newcomb's benefits on a dollar-for-dollar basis. See MISS. CODE ANN. § 71-5-357 (b)(iv).

The Fifth Circuit has held that "[a]n employer's portion of retirement *and other payments made to a terminated employee*" should be deducted from a lost wage award under the FMLA. Lubke, 455 F.3d at 499-500 (emphasis added). This is because, were the employee to receive compensation for wages lost in addition to other payments made by the employer during the damages period, the plaintiff would receive a windfall. See Hardy v. City of Tupelo, Miss., 2010 WL 730314, at *2 (N.D. Miss. Feb. 25, 2010) (citation and quotation omitted). To avoid such a windfall here, the Court exercises its discretion to reduce Newcomb's award by $20,915, the amount of unemployment benefits received, as evidenced by Newcomb's tax returns.[8]

Newcomb's award is therefore initially reduced to $82,257.98 to reflect the amount of wages supported by the evidence during the back pay period, and is further reduced by $1,080 for interim earnings and $20,915 for unemployment compensation effectively paid by CSD. The Court does not find additional remittitur to be appropriate on the basis of Newcomb's self-employment or his college attendance. The jury's final adjusted award equals $60,262.98.

---

[8] 2010 unemployment compensation ($2,820) + 2011 unemployment compensation ($12,220) + 2012 unemployment compensation ($5,875) = $20,915.

*(E) Newcomb's Motion to Alter or Amend the Judgment*

Having upheld Newcomb's back pay award in part, the Court now addresses Newcomb's Motion to Alter or Amend the Judgment [82], wherein he asks the Court to assess prejudgment interest, liquidated damages, and equitable relief in the form of reinstatement or front pay. The Court considers each request in turn.

<u>Prejudgment Interest</u>

The FMLA provides that an employer "shall be liable" for "interest on [back pay] calculated at the prevailing rate[.]" 29 U.S.C. § 2617(a)(1)(A)(ii). Although the Fifth Circuit has not addressed the availability of such prejudgment interest under the FMLA, the Southern District of Texas has found that when the jury awards back pay, the FMLA *mandates* an award of prejudgment interest. <u>Carroll v. Sanderson Farms, Inc.</u>, 2014 WL 549380, at *5 (S.D. Tex. Feb. 11, 2014); <u>see</u> <u>also</u> <u>Dotson v. Pfizer, Inc.</u>, 558 F.3d 284, 302 (4th Cir. 2009) ("Pre-judgment interest automatically becomes part of the damages award under the plain terms of the statute."); <u>Hite v. Vermeer Mfg. Co.</u>, 446 F.3d 858, 869 (8th Cir. 2006) ("Section 2617 indicates that the award of such interest is mandatory.").

CSD argues against prejudgment interest by citing authority holding prejudgment interest to be unavailable in certain types of suits under the FLSA. <u>See</u> <u>Reich v. Tiller Helicopter Servs., Inc.</u>, 8 F.3d 1018, 1031 (5th Cir. 1993) (citing <u>Brooklyn Savs. Bank v. O'Neil</u>, 324 U.S. 697, 715-16, 65 S. Ct. 895, 59 L. Ed. 1296 (1945)) (other citation omitted) (explaining that Fifth Circuit authority has not permitted recovery of prejudgment interest in suits for unpaid minimum wages under 29 U.S.C. § 216 because of the availability of liquidated damages). As the Court has noted, FLSA cases are generally helpful in interpreting the FMLA because the remedial schemes in both enactments are similar. <u>Lubke</u>, 455 F.3d at 499. But the similarities between the

FLSA and FMLA vanish on the topic of interest. The remedial provisions of the FLSA include no textual authorization for interest. See 29 U.S.C. §§ 216-17. In contrast, the FMLA provides that an employer "*shall* be liable" for prejudgment interest. 29 U.S.C. § 2617(a)(1)(A)(ii) (emphasis added). Thus, whereas prejudgment interest is often unavailable to a prevailing party under the FLSA, see Reich, 8 F.3d at 1031, it is not only available under the FMLA, but it is required. See Carroll, 2014 WL 549380, at *5; 29 U.S.C. § 2617(a)(1)(A)(iii). The Court accordingly finds that Newcomb is entitled to prejudgment interest on his back pay award.

The FMLA provides for interest at the "prevailing rate," without defining what that rate may be. 29 U.S.C. § 2617(a)(1)(A)(ii). Newcomb opines that interest should compound annually at the federal prime rate of 3.25%, and CSD agrees that if interest is awarded, Newcomb's proposed rate is appropriate. Indeed, other district courts within the Fifth Circuit have applied the federal prime rate. Carroll, 2014 WL 549380, at *4 n.1 ("The Court observes that 3.25% is the federal prime rate and an appropriate rate for an FMLA case."); c.f. EEOC v. Serv. Temps, 2010 WL 5108733, at *6 (N.D. Tex. Dec. 9, 2010) (utilizing the federal prime rate to assess prejudgment interest under the ADA), aff'd, 679 F.3d 323 (5th Cir. 2012). Accordingly, the Court agrees that interest on Newcomb's back pay award is appropriately assessed at a rate of 3.25%, and is to be compounded annually.

Liquidated Damages

Newcomb next argues that he is entitled to liquidated damages, which equal "an additional amount in the sum of" damages awarded for lost compensation plus interest. 29 U.S.C. § 2617(a)(1)(A). The FMLA mandates such an award unless CSD demonstrates that the specific act or omission triggering FMLA liability "was in good faith and that [CSD] had reasonable grounds for believing that the act or omission was not a violation . . . ." Id. FLSA

cases provide assistance in interpreting what constitutes good faith and reasonable grounds within the context of the FMLA. <u>Nero v. Indus. Molding Corp.</u>, 167 F.3d 921, 928 (5th Cir. 1999) (citations omitted).

Even if CSD successfully proves the existence of good faith and reasonable grounds, the Court is afforded discretion, but is not required, to reduce the liquidated damages. <u>Id.</u> at 929. As the Fifth Circuit has explained, "[d]oubling of an award is the norm under the FMLA" and any discretion to reduce liquidated damages "must be exercised consistently with the strong presumption under the statute in favor of doubling." <u>Id.</u> (citation and quotation omitted).

In an attempt to demonstrate good faith and reasonable grounds, CSD first highlights a conversation between Childress and the CSD School Board Attorney, in which Childress received approval to terminate Newcomb pursuant to the previously approved reduction-in-force plan, even though Newcomb had been recently injured and was on leave. CSD cites two cases arising under the FLSA in which the Fifth Circuit upheld the lower courts' findings of good faith based, in part, on conversations with counsel. <u>See</u> <u>Lee v. Coahoma Cnty., Miss.</u>, 937 F.2d 220, 227 (5th Cir. 1991); <u>Hill v. J.C. Penny Co.</u>, 688 F.2d 370, 375 (5th Cir. 1982). In <u>Lee</u>, the defendant, a Mississippi county, sought advice of counsel in structuring a compensation plan that complied with the FLSA and consulted with the Department of Labor to ensure its acceptability. 937 F.2d at 227. Although the county's sheriff failed to implement the program correctly, the Fifth Circuit affirmed the district court's finding that the defendant acted in good faith and had reasonable grounds to believe its conduct was compliant. <u>Id.</u> Similarly, in <u>Hill</u>, the fact that counsel for the defendant had erroneously advised that a policy was in compliance with the Equal Pay Act, "in th[at] particular case[,] . . . insulat[ed] defendant from an award of liquidated damages." 688 F.2d at 375. Importantly, in both cases, the Fifth Circuit did not specifically find

good faith, but rather explained that the district court did not abuse its discretion in making the good faith determination. See Lee, 937 F.2d at 227; Hill, 688 F.2d at 375.

Turning to the present case, Childress, in his conversation with the School Board Attorney, sought and received approval to terminate Newcomb pursuant to the previously approved reduction-in-force plan. However, based on the instruction given to the jury, a finding of retaliation could only be made if the jury either (a) rejected CSD's assertion that Newcomb was terminated as part of the reduction-in-force or (b) found that Newcomb's FMLA leave was otherwise a motivating factor in CSD's decision and that CSD failed to prove that Newcomb would have been terminated apart from his taking leave.[9] See Richardson, 434 F.3d at 332. Therefore, unlike in Lee where the violation occurred because an employee inadequately implemented a policy approved by counsel, 937 F.2d at 227, and unlike in Hill where the violation was premised on a plan approved by counsel that turned out to be illegal, 688 F.2d at 375, the jury's finding of retaliation in the present case could not have been predicated on the reduction-in-force. Rather, in holding CSD liable, the jury was required to find that Newcomb was terminated for taking FMLA leave, a reason independent of the reduction-in-force plan. See Powell v. Rockwell Int'l Corp., 788 F.2d 279, 287 n.8 (5th Cir. 1986) (rejecting argument that conversation with counsel demonstrated good faith when the jury, by finding retaliation, necessarily rejected the reason approved by counsel).

Stated differently, to avoid an award of liquidated damages, the employer must demonstrate good faith and reasonable grounds with respect to "the act or omission *which*

---

[9] Factual findings such as these, which are necessary to the jury's verdict, must be accepted by the Court in making its determination of good faith and reasonable grounds. Carroll, 2014 WL 549380, at *5 (quoting Arban v. W. Pub. Corp., 345 F.2d 390, 408 (6th Cir. 2003)) ("In an FMLA suit, when legal and equitable issues are decided in the same case and depend on common determinations of fact, the questions of fact are submitted to the jury, and the court in resolving the equitable issues is bound by the jury's finding.").

*violated*" the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii) (emphasis added). Though the Board's attorney may have approved the termination of Newcomb while he was on leave, there is no evidence that he approved action terminating Newcomb *for* taking leave.[10] See Richardson, 434 F.3d at 332. Therefore, the Court finds that Childress' conversation with counsel does not demonstrate good faith or reasonable grounds.

CSD highlights two other actions, which it claims demonstrate good faith and reasonable grounds. Childress testified that CSD waited to terminate Newcomb until after his accrued paid sick time and vacation time expired, and it is undisputed that CSD did not contest Newcomb's claim for unemployment benefits. Newcomb correctly notes, however, that these obligations are beyond the scope of the FMLA. Vacation and sick leave are governed by Newcomb's contract with CSD. Unemployment compensation is governed by state law. See MISS. CODE ANN. § 71-5-501 *et seq.* CSD has failed to explain, nor does the Court find, a relationship between these obligations and the FMLA violation found by the jury in this case. See 29 U.S.C. § 2617(a)(1)(A)(iii) (permitting the Court to reduce or omit liquidated damages only when the violation itself was in good faith). Accordingly, the Court finds that CSD has failed to demonstrate that its actions were in good faith or that it had reasonable grounds for violating the FMLA. Consistent with this finding and exercising any discretion in accordance with the strong presumption of liquidated damages, the jury's award of back pay and the Court's assessment of prejudgment interest are hereby doubled. See id.

Reinstatement or Front Pay

In addition to the awards of back pay, prejudgment interest, and liquidated damages, Newcomb also requests reinstatement or front pay pursuant to 29 U.S.C. 2617(a)(1)(B), which

---

[10] The Court notes that, even if CSD had produced evidence that the attorney prospectively approved FMLA retaliation, this would hardly constitute the reasonable grounds required to avoid an award of liquidated damages. See 29 U.S.C. § 2617(a)(1)(A).

provides that an employer is liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."

Procedurally, CSD contends Newcomb waived his entitlement to such an equitable remedy because neither a request for reinstatement nor a request for front pay appear in the Pretrial Order [70], and because he did not ask for a jury instruction for either form of relief. However, at paragraph nine of the Pretrial Order [70], both reinstatement and front pay are listed as outstanding issues of law. Additionally, it was unnecessary for Newcomb to request a jury instruction for these remedies, as they are equitable in nature and appropriately preserved for the judge, not the jury, to decide. See c.f., Palasota, 499 F.3d at 488 (explaining that the standard on review is whether the judge abused his discretion in awarding "equitable remedies, such as front pay and reinstatement" under the ADEA). The Court finds that Newcomb may appropriately pursue his claims for reinstatement and front pay.

The Fifth Circuit has instructed that the preferred equitable remedy is reinstatement. Downey v. Strain, 510 F.3d 534, 544 (5th Cir. 2007) (citing Giles v. Gen. Elec. Co., 245 F.3d 474, 489 (5th Cir. 2001)). Before deviating from this preference, the Court must first "consider 'and adequately articulate' its reasons for finding reinstatement to be infeasible . . . ." Palasota, 499 F.3d at 489 (quoting Julian v. City of Houston, 314 F.3d 721, 729 (5th Cir. 2002)). Among factors the Fifth Circuit has considered in determining the feasibility of reinstatement are "whether positions now exist comparable to the plaintiff's former position and whether reinstatement would require an employer to displace an existing employee[,]" as well as "whether the plaintiff has changed careers and whether animosity exists between plaintiff and his former employer." Id. (citations omitted).

In this case, after Newcomb was terminated, CSD did not replace him, but instead eliminated his position altogether. For CSD to rehire him to perform similar job tasks, it would either have to create a new position or terminate a current employee. Additionally, Newcomb has changed careers, as he now owns his own air conditioning business. Though the Court has not perceived any undue animosity between Newcomb and CSD, it nonetheless finds that reinstatement would be infeasible given the current circumstances.

Having found that reinstatement is infeasible, the Court addresses whether Newcomb is entitled to front pay, a determination squarely within the Court's discretion. <u>Downey</u>, 510 F.3d at 544. In reaching its decision, the Court "must consider whether an award of front pay is reasonable under the facts of the case." <u>Id.</u> The Fifth Circuit has warned that front pay "awards must be carefully crafted to avoid a windfall to the plaintiff," as front pay is not intended to be punitive in nature. <u>Palasota</u>, 499 F.3d at 490. In addition, a "substantial liquidated damage award may indicate that an additional award of front pay is inappropriate or excessive." <u>Id.</u> (quoting <u>Walther v. Lone Star Gas Co.</u>, 952 F.2d 119, 127 (5th Cir. 1992)). This is because substantial liquidated damages "further strengthen[] the court's judgment that [the plaintiff] has already been made whole." <u>Id.</u> (quotation and citation omitted). In determining whether front pay would be reasonable, the Court may also consider:

> (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship.

<u>Downey</u>, 510 F.3d at 544 (citing <u>Reneau v. Wayne Griffin & Sons, Inc.</u>, 945 F.2d 869, 871 (5th Cir. 1991)).

As the Court has found and as Newcomb concedes, the jury's calculation of back pay exceeded a rational approximation of his lost compensation. And although the Court reduced the

award to conform to the evidence, it did so pursuant to the maximum recovery rule out of respect to the jury's verdict. The Court has awarded Newcomb prejudgment interest as required under the FMLA. This amount, when doubled for liquidated damages, represents more than five times Newcomb's annual salary at CSD, even in the absence of front pay. The Court finds this award, especially the liquidated damages portion, to be substantial on the facts of this case.

In addition to this significant monetary award, the Court considers the nature of Newcomb's employment with CSD. See id. at 544-45. Newcomb worked at CSD for less than four years as an at-will employee and had previously been slated for termination as part of the reduction-in-force plan. Although he was granted an extension, it was not clear at trial whether this was a permanent extension or whether it was intended to eventually expire. The proposition that but for the FMLA violation, Newcomb would have been employed at CSD for any length of time following the judgment in this case is, in the Court's view, highly speculative. See id. (noting that the speculative nature of employment may factor into the decision of whether to award front pay). In light of Newcomb's relatively short tenure at CSD, the potentially temporal nature of at-will employment, CSD's previous reduction-in-force plan, as well as the relief to which Newcomb is already entitled, the Court finds that an award of front pay would be unreasonable under the circumstances and would result in an impermissible windfall in Newcomb's favor. Accordingly, Newcomb's request for equitable relief is DENIED.

### (F) Conclusion

For the foregoing reasons, CSD's Motion for Judgment as a Matter of Law is DENIED, CSD's Motion for a New Trial is DENIED, CSD's Motion for Remittitur is GRANTED IN PART and DENIED IN PART; and Newcomb's Motion to Alter or Amend the Judgment is GRANTED IN PART and DENIED IN PART.

The jury's verdict is upheld, and the award is remitted to the amount of $60,262.98 to reflect wages supported by the evidence less Newcomb's net interim earnings and unemployment compensation Newcomb received. The Court then assesses prejudgment interest on the reduced jury award at 3.25%, compounding annually from Newcomb's termination date of September 17, 2010 until June 12, 2014, the date of judgment. The Court additionally awards liquidated damages in a sum equal to the remitted award plus the prejudgment interest. A separate order to that effect shall issue this day.

SO ORDERED, this 31st day of March, 2015.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**